# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **JAMES SANDERS ETTER,** | )
| | )
| Plaintiff, | ) Case No. 1:06CV00115
| | )
| v. | ) **OPINION**
| | )
| **JAMES A. SPENCER, III, ET AL.,** | ) By: James P. Jones
| | ) Chief United States District Judge
| Defendants. | )

*Robert M. Galumbeck and Michael L. Dennis, Galumbeck, Dennis & Kegley, Attys., Tazewell, Virginia, for Plaintiff; Elizabeth K. Dillon, Guynn, Memmer & Dillon, P.C., Salem, Virginia, and C. Eric Young, Tazewell County Attorney, Tazewell, Virginia, for Defendants.*

In this § 1983 action a terminated local government employee seeks damages based on statements made following his termination. I find that the plaintiff has not suffered a deprivation of a constitutionally protected liberty interest and thus enter summary judgment in favor of the defendants.

I

The plaintiff James Sanders Etter supervised the construction and operation of the Tazewell County, Virginia, landfill before he was terminated from his position as the Environmental Control Director for the County. Following his termination, the

Tazewell County Board of Supervisors ("Board") passed a resolution requesting an investigation into improper spending at the landfill. Several articles appeared in the local press linking the plaintiff's termination to the investigation. The plaintiff brought this action, seeking recovery under 42 U.S.C.A. § 1983 (West 2003), alleging that the public resolution and subsequent press coverage damaged his reputation and constituted a deprivation of a liberty interest. The defendants are James A. Spencer, III, the Tazewell County Administrator, and Earl Griffith, David R. Anderson, William B. Rasnick, Dan Bowling, and Donnie Lowe, who were members of the Tazewell County Board of Supervisors at the time of the plaintiff's termination.[1]

Following discovery, the defendants have moved for summary judgment in their favor, which motion, after briefing and oral argument, is ripe for decision.

II

Summary judgment is appropriate when there is "no genuine issue of material fact," given the parties' burdens of proof at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see* Fed. R. Civ. P. 56(c). In determining whether the

---

[1] Former Board member Donnie Lowe is now deceased and his estate is included as a defendant in this action. The defendants are being sued in both their official and individual capacities, except the official capacity claims against former Board member Dan Bowling, deceased Board member Donnie Lowe, and the Estate of Donnie Lowe have been dismissed.

moving party has shown that there is no genuine issue of material fact, a court must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Ross v. Commc'ns Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985).

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Id.* at 327. It is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotations omitted).

The essential facts of the present case, recited in the light most favorable to the plaintiff on the summary judgment record, are as follows.

The plaintiff Etter served as the Environmental Control Director of Tazewell County, in which capacity he supervised the construction and operation of the County Landfill. In October 2004, the plaintiff's supervisor, County Administrator Spencer, became concerned about cost overruns associated with the landfill construction and

brought these to the attention of the Board. These overruns were discussed by the Board during two closed sessions and the plaintiff was given the opportunity to respond in writing to the concerns raised. On December 15, 2004, in a private meeting, Spencer offered the plaintiff the choice of resigning or being terminated. The plaintiff refused to resign and was terminated for insubordination and failure of performance.

On the day following the plaintiff's termination, the annual financial audit was presented at an open Board meeting; it noted that "the Landfill supervisor had authorized work in excess of the contract without entering into change orders as required . . . ." (Spencer Decl. ¶ 10; D.'s Br. Supp. Summ. J. Ex. 7.) In another open meeting, on January 4, 2005, the Board passed a motion requesting that the Commonwealth's Attorney "investigate the alleged improper spending at the Tazewell County Landfill." (Spencer Decl. ¶ 9; D.'s Br. Supp. Summ. J. Ex. 6.) This motion did not mention the plaintiff by name, nor did it refer to him by his former job title. In response, local newspapers published several articles linking the plaintiff's termination with the investigation into improper spending. However, these articles consistently stated that county officials would not discuss the reasons for the plaintiff's termination.

Ultimately, the landfill investigation did not result in criminal prosecution and the local media reported that the plaintiff had been cleared of any wrongdoing associated with the landfill. The plaintiff is currently employed as a landfill operations manager and has been elected by local voters to a position on the Soil and Water Conservation District.

III

Summary judgment is appropriate in this case because the plaintiff has failed to make a sufficient showing to establish any violation of a constitutionally protected liberty interest. The plaintiff complains that the Board's public decision to investigate landfill operations and the subsequent press coverage linking his termination to the investigation stigmatized his reputation and constituted a deprivation of liberty without due process.

For a public employee to successfully claim a violation of a liberty interest, he must demonstrate that the charges made against him, "(1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 646 (4th Cir.), *cert. denied*, 128 S. Ct. 805 (2007). For charges to be sufficiently stigmatizing to implicate constitutionally protected liberty interests,

these "must at least imply the existence of serious character defects such as dishonesty or immorality that might seriously damage the plaintiff's standing and associations in his community or foreclose his freedom to take advantage of other employment opportunities." *Zepp v. Rehrmann*, 79 F.3d 381, 388 (4th Cir. 1996) (internal citations, quotations and alterations omitted). Allegations of incompetence or unsatisfactory job performance are not sufficiently stigmatizing to establish a deprivation of a liberty interest. *Id.* Mismanagement of funds is likewise not a serious character defect whose publication would seriously damage an employee's reputation. *Russillo v. Scarborough*, 935 F.2d 1167, 1172 (10th Cir. 1991). Because none of the public statements made by the defendants were stigmatizing, I find that the plaintiff has not established a liberty interest violation.

In this case, the defendant County Administrator and Board members made no public statements pertaining to the reasons for the plaintiff's dismissal. Rather, statements made in public Board meetings pertaining to cost overruns in the landfill construction and the Board's decision to request an investigation into the "alleged improper spending" at the landfill, were connected, by the local media, to the plaintiff's termination.

The plaintiff relies on *Owen v. City of Independence*, 445 U.S. 622 (1980), to argue that public statements of a local government body can be stigmatizing when

viewed in the context of subsequent media coverage. In *Owen*, an investigation into the operation of the police department's property room concluded that department records were insufficient to account for property belonging in the room, but that there was no evidence of criminal activity. In response, a city councilman read a statement during a public meeting charging that the chief of police "had misappropriated . . . property for his own use, that narcotics and money had mysteriously disappeared from his office . . . and that things have occurred causing the unusual release of felons," and moved that the investigation reports be released to the media and the prosecutor for action to be taken against those involved in the "illegal, wrongful, or gross[ly] inefficient activities" described in the investigative reports. *Id.* at 628-29 (internal quotations omitted). The local press covered the investigation and the chief's subsequent termination extensively, linking the two events. The Court held that even if the councilman's accusations did not cause the chief's discharge, "the defamatory and stigmatizing charges certainly occurred in the course of the termination of employment." *Id.* at 633 (internal citations and alteration omitted).

Compared with the egregious statements made in *Owen*, the statements made by defendant Board members, merely alleging cost overruns and improper spending, do not carry the same moral implications. More apropos is *Russillo v. Scarborough*, 935 F.2d 1167 (10th Cir. 1991). In *Russillo*, a court employee was fired shortly after

- 7 -

Case 1:06-cv-00115-JPJ-PMS   Document 67   Filed 04/27/08   Page 7 of 9   Pageid#: 879

the discovery that money had been stolen from the court. However, no court official ever accused the fired employee of wrongdoing and any such impression was created by the newspaper's juxtaposition of his termination and the stolen funds rather than by any official statement. *Id.* at 1172. Further, news accounts may have implied that the employee was fired for mismanagement, but did not suggest that he actually stole the money. *Id.*

Here, like in *Russillo*, the public statements made by the defendant Board members never connected the plaintiff's termination and the landfill investigation. These statements merely addressed cost overruns and the need for investigation into the landfill spending and never named the plaintiff as a target of the investigation. Further, local newspaper articles suggested only that the plaintiff was terminated because he authorized landfill spending in excess of the contract. This allegation is analogous to mismanagement and does not imply a serious character defect such as dishonesty or immorality. As such, the public statements of the defendants cannot be considered stigmatizing and do not constitute a violation of the plaintiff's liberty interest.

IV

For all of these reason, I find that summary judgment in favor of the defendants must be granted. A separate final judgment will be entered herewith.

DATED: April 27, 2008

/s/ JAMES P. JONES
Chief United States District Judge